# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR R. JONES, | Case No. 1:17-cv-00109-SAB (PC) |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | (ECF No. 29) |
| E. MEDDLY, | |
| Defendant. | |

Plaintiff Arthur R. Jones is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the jurisdiction of the United States Magistrate Judge.  (ECF Nos. 8, 17, 18, 21.) Currently before the Court is Defendant E. Meddly's[1] motion for summary judgment, filed September 14, 2018.  (ECF No. 29.)

## I.

## PROCEDURAL HISTORY

Plaintiff filed this action on January 24, 2017, and following screening, the Court dismissed the complaint with leave to amend.  (ECF Nos. 1, 9.)  Plaintiff's action proceeds on his first amended complaint filed June 7, 2017, bringing a claim against Defendant for deliberate

---

[1]  The Court notes that while the complaint and docket reflect Defendant's name as spelled "Meddly," the briefing and declaration of Defendant submitted reflect the name is spelled "Medley."

1

indifference to Plaintiff's health and safety in violation of the Eighth Amendment. (ECF No. 10.) On September 15, 2017, Defendant filed an answer. (ECF No. 15.) On September 20, 2017, the Court issued a discovery and scheduling order, which was amended on March 2, 2018. (ECF Nos. 16, 28.)

On September 14, 2018, Defendant filed a motion for summary judgment. (ECF No. 29.) On October 9, 2018, Plaintiff filed what he titled: 1) "Declaration; Response & Rejection to Defendant E. Meddly [sic] Summary Judgment. In support to plaintiff [sic] declaration;" 2) "Summary Judgment Response Motion of Response of Summary Judgment [sic]. In support the [sic] Rejection & Support of Plaintiff [sic] Declaration;" and 3) a declaration from Plaintiff. (Pl.'s Opp'n Def.'s Mot. Summ. J. ("Opp'n"), ECF No. 32.) The Court construes the filings collectively as Plaintiff's opposition to Defendant's motion for summary judgment. In the same filing, Plaintiff submitted a request for extension of time to respond to Defendant's motion for summary judgment, which was not docketed separately as an *ex parte* request or motion, and which the Court did not address previously. (ECF No. 32 at 7.)[2] On October 16, 2018, Defendant filed a reply to Plaintiff's opposition to Defendant's motion for summary judgment. (ECF No. 33.) On November 5, 2018, Plaintiff filed what he titled Plaintiff's response to Defendant's motion of opposition of summary judgment, which was subsequently stricken by the Court because the Court construed the filing as an improper surreply. (ECF Nos. 34, 35.)

Given that Plaintiff is an incarcerated *pro se* litigant, and because the Court was previously unaware that Plaintiff had submitted a request for an extension of time when he submitted his filings on October 9, 2018 (ECF No. 32 at 7), the Court will vacate its order striking Plaintiff's November 5, 2018 filing (ECF No. 35) and accept the November 5, 2018 filing (ECF No. 34) as Plaintiff's surreply.[3]

---

[2]  All references herein to pagination of electronically filed documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3]  In Plaintiff's request for additional time to respond to Defendant's motion for summary judgment, Plaintiff stated he needed additional time for case research given the limited amount of time he can use the prison library. (ECF No. 32 at 7.) Upon review of Plaintiff's November 5, 2018 filing, it appears that Plaintiff was able to incorporate multiple citations to cases, and Plaintiff has not filed any other requests for leave to submit additional filings to oppose Defendant's motion for summary judgment, and therefore the Court shall accept Plaintiff's filing, and finds

1    Defendant's motion for summary judgment is deemed submitted for review, without oral

2  argument.  L.R. 230(l).

## II.

### LEGAL STANDARD

5    Any party may move for summary judgment, and the Court shall grant summary

6  judgment if the movant shows that there is no genuine dispute as to any material fact and the

7  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

8  omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

9  position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

10  particular parts of materials in the record, including but not limited to depositions, documents,

11  declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

12  absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

13  support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

14  other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

15  Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir.

16  2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

17    In judging the evidence at the summary judgment stage, the Court does not make

18  credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509

19  F.3d 978, 984 (9th Cir. 2007), and it must draw all inferences in the light most favorable to the

20  nonmoving party and determine whether a genuine issue of material fact precludes entry of

21  judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936,

22  942 (9th Cir. 2011).

23  *///*

24  *///*

25  *///*

26  *///*

27

28  permitting such filing as a surreply sufficiently addresses his original request for additional time.  (ECF Nos. 32, 34.)

**III.**

**DISCUSSION**

**A.**     **Summary of Allegations in Plaintiff's First Amended Complaint**

On January 23, 2016, while Defendant was escorting Plaintiff to his cell after showering, Plaintiff explained to Defendant that he has a hard time maintaining balance with his hands handcuffed behind his back.  Plaintiff also explained to Defendant that the ground was slippery and wet from the other prisoners who showered previously and therefore, Plaintiff explained that he needed assistance trying to walk back to his cell while wearing shower thongs.  Plaintiff states that he asked Defendant to assist him and maintain a secure hold of Plaintiff's arm to assure balance.  Plaintiff notes that this request is per departmental procedures[4] and common practice while escorting inmates with their hands cuffed behind their backs.  Defendant failed to assist Plaintiff and only stated "you'll be O.K."

As Plaintiff was mid-way up the metal staircase he lost his balance and fell face-first. Plaintiff briefly lost consciousness and was dazed and confused.  Plaintiff suffered a chipped

---

[4]   Plaintiff contends that Defendant violated prison policy by not maintaining a hold on Plaintiff while being transported with his hands cuffed behind his back.  Plaintiff submits a copy of the Kern Valley State Prison Operational Procedure No. 200 applicable to the Administrative Segregation Unit.  (ECF No. 34 at 10.)  Section (E)(5) of the policy states that "[w]hen escorting ASU inmates the escorting officer(s) will have their Expandable Baton drawn and the escort will be 'hands on' at all times unless a lead chain is utilized for multiple escorts.  This is for the protection of inmates and staff."  (Id.)  Section (E)(6) states "[d]uring all in-house escorts (e.g. yard, shower, etc.) inmates shall be attired in boxer shorts, T-shirts, and canvas shoes, orthopedic shoes or shower shoes," and "[e]scorting officer(s) shall maintain hands-on control of the inmate(s) at all times and escort to the intended destination without delay."  (Id.)  Plaintiff's suggestion that Defendant violated this policy does not change the Court's analysis in this order.  First, there is no indication or evidence demonstrating that Plaintiff was kept in the Administrative Segregation Unit which this policy is applicable to.  Additionally, the policy's purpose appears to be for safety of inmates and staff from violent actions, given it is applicable to the Administrative Segregation Unit, and not to prevent prisoners from falling while handcuffed.  Even if Plaintiff was in the Administrative Segregation Unit and the purpose of the policy was in part to prevent prisoners from falling while handcuffed, a violation of the policy would not change the Court's conclusions.  See Ashlock v. Sexton, No. 214CV00360JMSMJD, 2016 WL 3476367, at *5–6 (S.D. Ind. June 27, 2016) (finding that even if the officer's actions were inconsistent with training or orders, such fact "does not itself negate qualified immunity where it would otherwise be warranted.") (quoting City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1777 (2015)); Murphy v. Gilman, No. 1:03-CV-145, 2006 WL 3613754, at *2 (W.D. Mich. Dec. 11, 2006) (holding "that the violation of policy directives are not relevant for inquiry into an Eighth Amendment claim of deliberate indifference," however are relevant to state law claims of gross negligence.) (citing Smith v. Freland, 954 F.2d 343, 347 (6th Cir.1992)); Cantrell v. Reed, No. 5:05CV00169 JLH/HDY, 2011 WL 4443573, at *3 (E.D. Ark. Aug. 1, 2011) (finding a violation of prison housing policy is not itself a constitutional violation for purposes of deliberate indifference analysis, however may demonstrate negligence) (citing Gardner v. Howard, 109 F.3d 427, 430 (8th Cir.1997)), report and recommendation adopted, No. 5:05CV00169 JLH, 2011 WL 4443539 (E.D. Ark. Sept. 26, 2011).

tooth, lacerations to his gums, and a deep gash wound to his upper lip which required Plaintiff to be immediately transported to an outside hospital facility to receive emergency medical care. The upper lip injury required medical reconstruction via sutures and medical glue. Plaintiff states he continues to suffer from migraine headaches and tremors.

Plaintiff brings his claim under the Eighth Amendment arguing Defendant violated his rights of freedom from cruel and unusual punishment by being deliberately indifferent, failing to act, and failing to provide safe conditions. Plaintiff argues the injuries would not have occurred if not for Defendant ignoring his problems regarding balancing while handcuffed. Plaintiff seeks $35,000.00 for pain and suffering, and $25,000.00 in punitive damages.

**B.  Statement of Undisputed Facts**

The Court has reviewed the undisputed facts set forth below which are derived from Defendant's statement of undisputed facts submitted with his motion for summary judgment. While Plaintiff, a *pro se* prisoner, did not submit his own statement of undisputed facts or a filing that outlines whether Plaintiff accepts or disputes each of Defendant's submitted facts, the Court refers to Plaintiff's first amended complaint which was signed with a declaration of truthfulness under penalty of perjury, and also refers to the full transcript of Plaintiff's deposition, and notes potential areas of dispute below.

1.    During all times relevant to the First Amended Complaint, Plaintiff Arthur Jones (AR8412) was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and incarcerated at Kern Valley State Prison (KVSP). (First Am. Compl. ("FAC"), ECF No. 10; Pl.'s Dep., Ex. D, ECF No. 29-5 at 34.)

2.    During all times relevant to the First Amended Complaint, Defendant Officer E. Medley was employed by CDCR as a Correctional Officer at KVSP. (FAC 2; Decl. of E. Medley ("Medley Decl.") ¶¶ 1-2, ECF No. 29-4; Pl.'s Dep., Ex. D, ECF No. 29-5 at 34.)

3.    On January 23, 2016, Plaintiff was housed at KVSP on Facility B, Building 6, A

1    section, cell 208.[5]  (Pl.'s Dep. 12:7-20.)

2    4.    On January 23, 2016, pursuant to Program Status Report (PSR) No. PSRKVSP-

3          B-16-001, Facility B was on "lockdown" because of a recent riot.  (Pl.'s Dep.

4          14:6-15; Pl.'s Dep., Ex. D, ECF No. 29-5 at 34.)

5    5.    Under the terms of PSR No. PSR-KVSPB-16-001, anytime inmates were out of

6          their cell, they were to be escorted in handcuffs—including to and from the

7          showers.  (Medley Decl. ¶ 3; Pl.'s Dep. 15:2-19, Ex. D.)

8    6.    Plaintiff's cell, 208, was located on the second tier of Building 6.  (Pl.'s Dep.

9          12:25-13:3; Medley Decl. ¶ 5.)

10   7.    The second tier is accessible via a staircase.  (Medley Decl. ¶ 6; Decl. of M.

11         Betzinger ("Betzinger Decl.") ¶ 2, ECF No. 29-3; Betzinger Decl., Ex. A, ECF

12         No. 29-3 at 8-10.)

13   8.    The staircase is fifteen steps high.  (Medley Decl. ¶ 6; Betzinger Decl. ¶ 2, Ex. A

14         at 8-9.)

15   9.    Each step of the staircase is comprised of a metal grate with a grid of cutouts that

16         prevent water from pooling on the steps.  (Medley Decl. ¶ 9; Betzinger Decl. ¶ 2,

17         Ex. A at 10-11; Pl.'s Dep. 26:11-27:4.)

18   10.   The front lip of each step is textured for grip.  (Medley Decl. ¶ 10; Betzinger

19         Decl. ¶ 2, Ex. A at 11.)

20         a.    The Court notes that when asked if there is any kind of texture or grip to

21               the stairs, Plaintiff stated no, it's "straight metal."  (Pl.'s Dep. at 27:5-6.)

22               A photograph of the stairs shows there is in fact a bumpy texture on the

23               edge portion of each of the stairs.  (Medley Decl. ¶ 10; Betzinger Decl. ¶

24               2, Ex. A at 11.)

25   11.   The first and last step are also painted yellow for visibility and safety.  (Medley

26         Decl. ¶ 11; Betzinger Decl. ¶ 2; Betzinger Decl., Ex. A at 8-10.)

27

28   [5] Plaintiff's deposition refers to B yard, sixth block, cell 208.  (Pl.'s Dep. at 12:7-20, ECF No. 29-5 at 9.)

12.  The staircase has tubular steel handrails on each side that run the full length of the staircase.  (Medley Decl. ¶ 7; Betzinger Decl. ¶ 2; Betzinger Decl., Ex. A at 7-9; Pl.'s Dep. 22:18-23:1.)

13.  There is a concrete wall immediately adjacent to the right side of the staircase. (Medley Decl. ¶ 8; Betzinger Decl. ¶ 2; Betzinger Decl., Ex. A at 7-9; Pl.'s Dep. 22:18-23:1.)

14.  On January 23, 2016, either Officer Medley or his partner escorted Plaintiff, handcuffed, from his cell on the second tier to the shower on the lower tier.  (Pl.'s Dep. 18:6-13, 19:15-7.)

15.  When Plaintiff was escorted to the shower, he was wearing only his boxers and his shower shoes, and was carrying socks, boxers, a shirt, and a towel.  (Pl.'s Dep. 18:14-19:4.)

16.  Plaintiff's shower shoes are comprised of foam and are similar to sandals or "flipflops."  (Pl.'s Dep. 19:3-14.)

17.  Plaintiff was uncuffed and allowed to take a shower.  (Pl.'s Dep. 15:13-16.)

18.  After Plaintiff took his shower, Plaintiff dried off and put on dry clothes.  (Pl.'s Dep. 19:18-20:7.)

19.  After Plaintiff dried off, he was re-handcuffed and escorted by Officer Medley towards the staircase.  (Pl.'s Dep. 20:11-21:5.)

20.  Before the parties left the shower area, Plaintiff told Officer Medley that a small area of the floor, immediately in front of the shower, was wet.  (Pl.'s Dep. 21:12-22:9.)

21.  The only area that was wet was a small area of the floor by the shower—the rest of the dayroom was dry.  (Pl.'s Dep. 22:1-9.)

   a.  During Plaintiff's deposition he was asked: "Then you get to the staircase. Did you say anything to him at that point about the floor, about anything else?"  Plaintiff answered "No.  We was good.  All the rest of the dayroom was dry."  (Pl's Dep. 22:1-5.)

7

22. At approximately 3:25 p.m., while Plaintiff was approximately halfway up the stairs, he tripped and fell. (FAC 4; Medley Decl. ¶ 12; Pl.'s Dep. 23:2-7, Ex. D.)

    a. The Court notes that the question directed at Plaintiff during his deposition, and a later statement during the deposition uses the word "slip," not "trip." (Pl.'s Dep. at 23:5-7, 25:21-22.) Plaintiff's complaint states he lost balance and fell. (FAC 4.)

23. Plaintiff's fall was likely caused by missing a step. (Pl.'s Dep. 25:18-26:4.)

    a. The Court notes that the deposition reflects Plaintiff stating: "I just – I was walking upstairs, going. And, boom, I just fell. I think I missed a stair or something. I slipped. I fell." (Pl.'s Dep. at 25:25-26:2.)

24. Immediately after Plaintiff tripped and fell, Officer Medley noticed Plaintiff's lacerated lip, and came to his aid. (Medley Decl. ¶ 15; Pl.'s Dep. 25:23-26:4, 27:10-28:2.)

25. Officer Medley assisted Plaintiff to his feet, escorted him to his assigned cell, and summoned medical staff shortly thereafter. (Medley Decl. ¶ 15; Pl.'s Dep. 25:23-26:4, 27:10-28:2.)

26. At approximately 3:31 p.m., Plaintiff was evaluated by Facility B medical staff. (Pl.'s Dep. 30:1-15, Ex. D.)

27. Plaintiff was evaluated by medical staff at KVSP, then transported to Delano Regional Medical Center (DRMC) for further care. (FAC at 4; Pl.'s Dep. 30:1-15, 35:7-36:13, Ex. D.)

28. As a result of the incident, Plaintiff sustained a two-centimeter laceration to his upper lip, pain on his forehead, swelling around the mouth area, and headaches for approximately two weeks. (Pl.'s Dep. 28:3-14, 30:16-31:24, 36:14-37:13, Ex. C, Ex. E.)

    a. The Court notes that Plaintiff also suffered a laceration to the lower lip, pain and bruising on the chest area, and claims he suffered a chipped front tooth. (Pl.'s Dep. at, 30:16-25; ECF No. 29-5 at 37, 41, 44-45.) On a

follow-up form, the upper lip injury is noted as 2.5 cm. (ECF No. 29-5 at 43.) On a form dated August 26, 2016, Plaintiff complains he is still suffering pain from the fall, and that it has caused him memory loss. (ECF No. 29-5 at 47.) On a form dated September 8, 2016, it is noted that Plaintiff has been experiencing headaches and pain in his lip since the fall. (ECF No. 29-5 at 48.) During the deposition on June 27, 2018, Plaintiff states he still suffers headaches. (Pl.'s Dep. at 40:11-12.)

29. At DRMC, Plaintiff's lacerated lip was repaired with a topical surgical glue. (Pl.'s Dep. 37:7-24, 39:3-15.)

30. At the time of the incident, Plaintiff did not have any disability-related restrictions, such as stair restrictions, a cane, crutches, a walker, or a wheelchair. (Pl.'s Dep. 43:25-44:6.)

31. Prior to the incident, the parties did not have any significant interactions with each other, and did not know each other. (Pl.'s Dep. 13:4-19; Medley Decl. ¶ 16.)

///

### C.    Evidentiary Objections

Plaintiff did not submit his own statement of undisputed facts. In his opposition, Plaintiff notes that there are pages missing from the deposition transcript attached to Defendant's motion for summary judgment. (Opp'n 2.) For clarification, Defendant did in fact submit a full copy of the deposition transcript and the Court reviewed the transcript noting certain aspects of the deposition that may explain or counter some of the undisputed facts as explained in the previous section. (ECF Nos. 30, 31.)

### D.    Defendant's Motion for Summary Judgment

Defendant argues the undisputed evidence shows Defendant did not disregard a substantial risk of serious harm to Plaintiff's safety, that the fall was accidental, and there were no exacerbating conditions that would convert the slip and fall into a constitutional violation. (Def.'s Mem. P. & A. Supp. Mot. Summ. J. ("MSJ") 1, ECF No. 29-1.) Alternatively, Defendant argues that he is entitled to qualified immunity because the law was not clearly established that

ordering an inmate to ascend stairs in handcuffs posed a sufficiently serious risk to the inmate's safety. (Id.)

    1.    <u>Defendant was not Deliberately Indifferent to a Substantial Risk of Serious Harm to Plaintiff</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 842 (1994); <u>Clem v. Lomeli</u>, 566 F.3d 1177, 1181 (9th Cir. 2009). Deliberate indifference is a high legal standard, under which "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (quoting <u>Farmer</u>, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " <u>Farmer</u>, 511 U.S. at 835 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)). It is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 842; <u>Clem</u>, 566 F.3d at 1181.

Defendant argues that absent exacerbating conditions that pose a serious unavoidable risk to an inmate's safety, <u>Frost v. Agnos</u>, 152 F.3d 1124, 1129 (9th Cir. 1998), "[s]lippery prison floors do not state even an arguable claim for cruel and unusual punishment," <u>LeMaire v. Maass</u>,

12 F.3d 1444, 1457 (9th Cir. 1993). (MSJ 5, citing <u>Brown v. Brasher</u>, No. CIV S-10-0479 MCE, 2012 WL 639446 (E.D. Cal. Feb. 27, 2012); <u>Collier v. Garcia</u>, No. 17-CV-05841 LHK (PR), 2018 WL 659014 (N.D. Cal. Jan. 31, 2018).) Under the backdrop of this caselaw, Defendant contends the undisputed facts demonstrate Defendant did not subject Plaintiff to a substantial risk of serious harm by ordering him to walk up the stairs while handcuffed after the shower. (MSJ 5.) First, Defendant argues the stairs themselves were not unsafe, given they were textured for grip, the first and last steps were painted yellow, and the handrails and adjacent wall minimized the risk of falling off the staircase. (DUF Nos. 9-13.) Second, Defendant argues that there could not be any significant amount of water on the stair area, based on Plaintiff's deposition testimony and the fact the metal stairs are grated allowing for water to pass through. (DUF Nos. 9, 20-21.) Plaintiff dried himself, and was wearing dry clothes. (DUF Nos. 15-16, 18.) Additionally, Plaintiff did not have any disability or stair restrictions, and even if Plaintiff had trouble ambulating, Defendant would not have known about it. (DUF Nos. 30-31.) Finally, Defendant emphasizes that Plaintiff "concedes that his fall was likely caused by missing a step – not by any unsafe conditions in the building." (MSJ 6; DUF No. 23.)

Defendant concedes that while it is true Plaintiff was in greater risk of injury because he was handcuffed, that risk stemmed from a proper purpose, given the prison was in lockdown because of a recent riot and inmates were required to be in handcuffs anytime they were out of a cell, and argues not handcuffing inmates could have created an even greater risk of injury to staff and inmates. (MSJ 7.) Defendant highlights that in <u>LeMaire</u>, 12 F.3d at 1457, the court noted "not restraining a dangerous inmate" during a shower "creates a situation which is potentially far more dangerous than forcing him to shower while shackled." (MSJ 7.) Defendant argues that at most, ordering Plaintiff to walk up the stairs while handcuffed is mere negligence, which cannot support a deliberate indifference claim. (MSJ 7.)

The Court's review of the caselaw demonstrates that conditions such as slippery prison floors, or a policy requiring an inmate to shower on a potentially slippery floor while handcuffed for safety reasons, are not situations that rise to the level of a constitutional violation. However, additional circumstances that increase the level of danger or increase the prison official's

awareness of such danger may make the situation rise to the level of a potential constitutional violation.

In LeMaire, the base-line slippery shower floor case, the Ninth Circuit rejected a request for an injunction sought prior to any injury, in relation to a prison policy requiring shackling "dangerous inmates" during showers. The Ninth Circuit noted that even if the floors are slippery and prisoners may fall, shackling a dangerous inmate in a shower does not create a sufficiently unsafe condition, and "[s]lippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." LeMaire, 12 F.3d at 1457 (alteration in original) (quoting Jackson v. Arizona, 885 F.2d 639, 641 (9th Cir.1989)).[6] The Ninth Circuit saw the practice as "a security imperative," noting the purpose of the restraints was not for punishment, but to protect other inmates and staff, and the difficulty in showering in restraints was "merely the price [LeMaire] must pay for his violent in-prison behavior." Id. at 1457 ("LeMaire's documented assaults on [four different dates] demonstrate beyond all doubt the wisdom of restraining this inmate."). The Ninth Circuit found "the record [was] devoid of any evidence whatsoever from which it could be even vaguely inferred that in shackling LeMaire during his showers, prison officials either were deliberately indifferent to his medical or personal needs." Id.

On the other end of the spectrum, in Frost v. Agnos, prison officials were found to have violated the Eighth Amendment by failing to provide an accessible shower to an inmate who used crutches when they knew the inmate had fallen and injured himself several times. 152 F.3d at 1129. The Ninth Circuit rejected the argument that "slippery shower floors cannot establish a constitutional claim," noting that because of the crutches he had fallen several times, which the officials were aware of, and "[s]lippery floors without protective measures could create a sufficient danger to warrant relief." Id. The Ninth Circuit found the repeated injuries and unsafe conditions stemming from the use of cutches distinguished the case from LeMaire and Jackson. 152 F.3d at 1129. The Court also noted the evolving standard of decency under the Eighth Amendment in relation to society's increasing work to make accommodations for disabled

---

[6] In Jackson, the Ninth Circuit reviewed a general claim from a prisoner complaining about slippery floors and dried beans for meals noting these two claims do not even state an arguable claim because the Constitution does not mandate "comfortable prisons." 885 F.2d at 641 (quoting Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981)).

individuals.  Id.

Defendant cites Brown v. Brasher, No. CIV S-10-0479 MCE, 2012 WL 639446 (E.D. Cal. Feb. 27, 2012).  In Brown, the plaintiff slipped in a puddle of water several cells away from his cell, and the court granted summary judgment in favor of the defendant because no trier of fact could reasonably find that defendant was aware of and deliberately disregarded a serious risk to his safety.  Id. at *4-5.  The Brown court found it significant that the puddle was located several cells away, that other inmates successfully walked around it, there was no indication that plaintiff was required to walk through the puddle in order to exit his cell, and thus "no evidence from which a reasonable trier of fact could conclude that plaintiff could not perceive the puddle of water or avoid it."  Id. at *4.  The court also found significant that there was no evidence the defendant knew of a risk and was deliberately indifferent to it, because there was no way defendant was aware of a previous letter concerning slipping on leaking water as it was not addressed to defendant, and just because defendant observed the puddle for the first time an hour before defendant fell, such fact did not demonstrate defendant knew it posed a serious risk.  Id. This was different from the situation in Frost, where the prison guards were found to be potentially indifferent where they were aware of the disabled prisoner falling multiple times and failed to take protective measures.  Id. at *5.

From review of these cases, it appears that awareness of a prisoner's disability or proclivity toward falling may turn a slippery prison floor into a potential constitutional claim, depending on the level of danger and awareness.  Thus, of significance is Plaintiff's claim that he told Defendant about his difficulty maintaining balance while his hands are cuffed behind his back, and Defendant allegedly acknowledged this and replied by stating "you'll be O.K."[7]  That

---

[7]  Although Plaintiff does not directly address this as a disputed fact in briefing, Plaintiff's first amended complaint was signed with a declaration of truthfulness under penalty of perjury.  The Court is required to construe the filings of a pro se party liberally, Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[w]e construe liberally the filings and motions of a pro se inmate in a civil suit."), and because an "inmate's choice of self-representation is less than voluntary . . . [and] coupled with the further obstacles placed in a prisoner's path by his incarceration," pro se inmates are given greater leeway than non-incarcerated pro se litigants, Thomas, 611 F.3d at 1150 (quoting Jacobsen v. Filler, 790 F.2d 1362, 1365 n.4 (9th Cir.1986)).  In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

Plaintiff was ascending steep metal stairs, stated his difficulty balancing while shackled, and was wearing flip-flops after showering makes this case less clear cut than a baseline slippery floor case. Compare Ashlock v. Sexton, No. 214CV00360JMSMJD, 2016 WL 3476367, at *2 (S.D. Ind. June 27, 2016) (while finding officer entitled to qualified immunity, denying summary judgment on deliberate indifference prong because "[r]equiring an inmate to descend stairs, in sandals, without any assistance or means with which to brace himself, is sufficiently hazardous under the Eighth Amendment," and whether the officer had "the requisite *mens rea* to comprise a constitutional injury is a material fact in dispute," as the officer was "clearly aware that Ashlock was in shower shoes and was required to descend the stairs with his hands cuffed behind his back," the officer "did not provide any physical bracing or assistance," and "[t]here was a substantial risk that Ashlock would fall."), with Gray v. Warm Springs Corr. Ctr., No. 2:13-CV-00901-RCJ, 2013 WL 4774632, at *4 (D. Nev. Sept. 4, 2013) (dismissing Plaintiff's claim on screening because he "plead no facts indicating that any defendant was aware of an excessive risk that Plaintiff would fall down the stairs, e.g., based on past incidents," and noting that "even though the risk of tripping naturally increases" when shackled, it is not deliberate indifference.)

However, even viewing the facts in the light most favorable to Plaintiff, the circumstances do not rise to the level of awareness of a disabling condition or proclivity of falling combined with a failure to respond to complaints about a dangerous condition that would translate into a constitutional violation as in Frost. In Frost, the Ninth Circuit noted the evolving standard of decency under the Eighth Amendment in relation to society's increasing work to make accommodations for disabled individuals, Frost, 152 F.3d at 1129. Here, Plaintiff did not have any disability-related restrictions such as stair restrictions, a cane, crutches, a walker, or a wheelchair. (DUMF 30.) Plaintiff's lone statement to Defendant immediately prior to the fall, during the time the prison was on lockdown following a riot, is not enough to demonstrate the level of awareness of a particular disability and proclivity for falling like that which was present in Frost. Frost, 152 F.3d at 1129. In Frost, not only was the inmate using crutches, he had

already fallen several times, the prison officials were officially on notice of the disability, and were specifically aware the previous falls were caused by using the crutches in the non-accessible shower, yet failed to remedy the dangerous situation. Id.

Further, here there <u>were</u> safety measures in place to prevent injuries from slipping on the stairs that Plaintiff was injured on. Specifically, there was grating in the steps to avoid water from pooling, there were yellow highlighted steps at the top and bottom, and the steps were textured for extra grip to prevent slipping. (UMF 9-11.)[8] The presence of these safety measures is particularly instructive given the Ninth Circuit's statement in <u>Frost</u> that "[s]lippery floors <u>without protective measures</u> could create a sufficient danger to warrant relief." <u>Frost</u>, 152 F.3d at 1129 (emphasis added). Here, unlike <u>Ashlock</u>, Plaintiff in this case was ascending the stairs, not descending. 2016 WL 3476367 at * 2 (form his top floor cell, when Ashlock "reached the top of the stairs," he began adjusting his sandal and "fell to the bottom of the stairs.").

Additionally, the incident here occurred following a riot and the prison was on lockdown, which necessitated all inmates to be transported with their hands cuffed behind their back. (DUMF 5.) While there is no evidence that Plaintiff was violent in prison like the prisoner in <u>LeMaire</u>, the restraining of inmates following the riot event was a "security imperative," not meant for punishment, but to protect inmates and staff. See <u>LeMaire</u>, 12 F.3d at 1457.

Finally, although Plaintiff told Defendant that he had trouble balancing, there is no evidence that Plaintiff was in fact having trouble balancing while Defendant escorted him across the dayroom floor and to the stairs. Although Plaintiff told Defendant the floor was wet near the shower area, the evidence shows that there was no water on the stairs. (DUMF 9, 18-21.)

Given these facts, the Court cannot find Defendant was deliberately indifferent to conditions posing a substantial risk of serious harm to an inmate. See <u>Denton v. Bala</u>, No. C 13-1374 SI PR, 2013 WL 2931897, at *3 (N.D. Cal. June 13, 2013) ("[L]arge numbers of people regularly climb and descend stairs without holding arm-rails, and large numbers of people regularly climb and descend stairs with their arms restricted (e.g., by holding packages, children,

---

[8]  The stairs also had handrails. Although Plaintiff was handcuffed at the time and would not have been able to easily grab onto them for balance, they would likely prevent him from falling off the side of the stairs onto the floor.

etc.)—all without falling," and thus "requiring the handcuffed inmate to descend a flight of stairs did not present an objectively serious condition required for an Eighth Amendment claim."); Curry v. Tilton, No. C-07-0775 EMC PR, 2012 WL 967062, at *14 (N.D. Cal. Mar. 21, 2012) ("Requiring an inmate to descend stairs while in waist restraints does not deny him the minimal civilized measure of life's necessities. Outside of prison, large numbers of people regularly climb and descend stairs without falling, and large numbers of people regularly climb and descend stairs with packages in their arms without falling."). As stated above, deliberate indifference is a high legal standard, under which "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " Toguchi v. Chung, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (quoting Farmer, 511 U.S. at 837). Even if Defendant "should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Accordingly, Defendant's motion for summary judgment is granted because Defendant did not deliberately disregard a substantial risk of serious harm to Plaintiff's safety. While the facts here do show somewhat more than a base-line slippery floor case, the additional factors do not rise to the level of a constitutional claim for deliberate indifference. Even if the factual circumstances support a finding of deliberate indifference, the Court finds Defendant would be entitled to qualified immunity as explained in the following section, and thus summary judgment would be granted in his favor on that alternative ground.

### 2. Defendant is Entitled to Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001); <u>Mueller</u>, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. <u>Pearson</u>, 555 U.S. at 236 (overruling holding in <u>Saucier</u> that the two-step inquiry must be conducted in a certain order); <u>Mueller</u>, 576 F.3d at 993-94.

Defendant argues he is entitled to qualified immunity because the law was not clearly established that ordering an inmate to ascend stairs in handcuffs posed a sufficiently serious risk to that inmate's safety. Specifically, he argues that at the time of the incident, a reasonable officer would only have known that slippery prison floors do not state an Eighth Amendment claim absent multiple exacerbating conditions that cause a serious and unavoidable risk to the inmate's safety. (MSJ 8.) Defendant argues it would be clear to a reasonable officer that it was constitutionally permissible to handcuff an inmate, even while showering, provided that security concerns warranted it, <u>LeMaire</u>, 12 F.3d at 1457, and thus extrapolates that it is even more permissible to handcuff an inmate prior to walking up a dry staircase, especially where there are no known unsafe conditions related to the stairs in question, and no physical disability on the part of the inmate. (MSJ 8.) Instead, Defendant argues to state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the slippery floor posed a serious, unavoidable threat to plaintiff's safety, <u>Frost</u>, 152 F.3d at 1124. (MSJ 8.)

The defense of qualified immunity affords the moving party no deference regarding disputed facts. "In qualified immunity cases, [viewing the facts in favor of the non-moving party] usually means adopting . . . the plaintiff's version of the facts." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). Consequently, Plaintiff's version of the incident governs summary judgment

review of a qualified immunity defense. Plaintiff alleges that:

> While escorting me to my cell after showering I explained to the defendant that I have a hard time maintaining balance with my hands handcuffed behind my back. In addition to that I explained to the defendant that the ground was slippery & wet from the others [sic] prisoners who showered before me and therefor I needed his assistance trying to walk back to my cell in shower thongs. I asked the defendant to assist me and maintain a secure hold of my arm to assure my balance . . . The defendant failed to assist me and replied "you'll be O.K."

(FAC 3-4.)

The dispositive question is whether an inmate's right to physical assistance while ascending stairs after showering, with his hands cuffed behind his back, after asking for assistance, was clearly established on January 23, 2016, when Plaintiff fell down the stairs. The Court finds that it was not clearly established.

A government official's conduct violates clearly established law where the "contours" of the right are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (internal quotation marks and citation omitted). A "case directly on point" is not required for a right to be clearly established, however, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (emphasis added). The U.S. Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular . . . not to define clearly established law at a high level of generality," but to inquire as to "whether the violative nature of particular conduct is clearly established." 563 U.S. at 742. In determining whether a right was clearly established the Court looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Community House, Inc. v. Bieter, 623 F.3d 945, 967 (9th Cir. 2010). Where there is no binding precedent, the courts should look to all available decisional law, including the law of other circuits and district courts. Id. Unpublished district court decisions can also inform the analysis in determining whether the law was clearly established. Bahrampour v. Lampert, 356 F.3d 969, 977 (9th Cir. 2004).

The facts of this case appear to fall somewhere between those in Jackson, LeMaire, and Frost, discussed above. Based on established Ninth Circuit law, at the time of the incident, it would have only been clear to a reasonable official that a potential hazard to an inmate, such as a

slippery floor, turns into a substantial risk of serious harm, and thus rises to the level of a potential constitutional violation, somewhere between a bare claim of a slippery floor or similar condition, and a claim of such hazard plus some known exacerbating condition or conditions, such as a known confluence of unrepaired hazards, prior injury, prior complaints, and/or a disability. Compare Frost, 152 F.3d at 1129 (finding that slippery floor plus exacerbating factors that prisoner repeatedly injured himself, and was forced to use crutches, was sufficient to establish serious condition); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985) ("We conclude that the safety hazards found throughout the penitentiary's occupational areas, exacerbated by the institution's inadequate lighting, seriously threaten the safety and security of inmates and create an unconstitutional infliction of pain."); Anderson v. Towne, No. 08–2480, 2010 WL 455387, *2-4 (E.D. Cal. Jan.29, 2010) (wheelchair-bound prisoner who discovered sharp, broken tiles at entrance to the shower, complained and continually made requests to have it repaired, survived motion for summary judgment, noting that in Frost, "a dangerous condition existed due to the combination of a slippery shower floor and the prisoner's disability-his broken leg and need to use crutches. There, a dangerous condition existed due to the broken floor tiles and Anderson's disability-his limited mobility and the weakness in his hands, which hampered his ability to reduce the risk of injury should he fall. Thus, Anderson, like the prisoner in Frost, alleges facts sufficient to show the damaged floor posed a substantial risk of serious harm to him."), with Osolinski v. Kane, 92 F.3d 934, 937-39 (9th Cir. 1996) (finding qualified immunity where plaintiff brought claim after prison's failure to repair an oven door which fell off causing burns, because no cases in the Ninth Circuit "clearly established that a single defective device, without any other conditions contributing to the threat to an inmates' safety, created an objectively insufficiently human condition violation of the Eighth Amendment, noting that Hoptowit "involved a condition—bad lighting—which exacerbated the inherent dangerousness of already-existing hazards, such that those hazards seriously threatened the safety and security of inmates.") (internal citation and quotation marks omitted); Gilman v. Woodford, No. 05–0337, 2006 WL 1049739 (E.D. Cal. April 20, 2006) (granting qualified immunity to defendants when prisoner slipped and fell in puddle of water from leaking ceiling, of which defendants knew,

finding a "reasonable prison official could have believed that the failure to repair the leaky roof did not violate the Eighth Amendment" under the Osolinski standard, where the "Ninth Circuit found it not clearly established that a single defective device, without any other conditions contributing to the threat of an inmates' safety, created an objectively insufficiently inhumane condition to be violative of the Eighth Amendment").

Like here, in Washington v. Sandoval, the Court stated the factual circumstances fell somewhere between Jackson and Frost. Taking the facts in the light most favorable to the plaintiff, the court established that: a toilet leak inside the plaintiff's cell continued for at least seventeen days after he notified the officers, the leaking water covered the entire area around the toilet and sink, and that plaintiff was a mobility impaired prisoner as officially recognized by the prison. Washington v. Sandoval, No. C 10-0250 LHK PR, 2012 WL 987291, at *6–9 (N.D. Cal. Mar. 22, 2012) on reconsideration, No. C 10-0250 LHK PR, 2012 WL 3236306 (N.D. Cal. Aug. 6, 2012) (upholding qualified immunity determination). Unlike the inmate in Frost who required crutches to ambulate, there was no evidence that plaintiff could not ambulate without a cane, there was no evidence that defendants knew plaintiff used a cane, and unlike Frost whose requests for accommodation went unanswered after repeatedly falling and injuring himself, there was no evidence plaintiff had fallen or injured himself prior to the maintenance staff's initial attempt to fix the leak. Id. at *7. The court noted that the "risk of harm turns into a substantial risk of serious harm somewhere between a bare claim of a slippery floor and a claim of a hazard plus some known exacerbating condition," and "[b]ecause the law is not clearly established as to when a slippery floor becomes sufficiently substantial for Eighth Amendment purposes, it would not be clear to a reasonable prison official when the risk of harm from not fixing a toilet leak changes from being a risk of *some* harm to a *substantial* risk." Id. at *8-9 ("Because the law was not clearly established that a reasonable prison official could have believed that the failure to respond to a toilet leak for almost three weeks was a sufficiently serious deprivation, this Court finds that Defendants are entitled to qualified immunity as to this portion of the deliberate indifference claim."). The Washington v. Sandoval court then surveyed the caselaw across the

country demonstrating that the law was not clearly established at the time.[9]  The distinctions

made between the plaintiffs in Sandoval and Frost are instructive here because there is no

evidence that Plaintiff Jones had an established mobility issue, no evidence that Defendant knew

of a mobility issue prior to the walk from the shower to the stairs, and there was there was no

evidence that Plaintiff Jones had fallen or injured himself prior to the incident or that any prior

complaints about unsafe conditions or mobility issues went unanswered by any prison staff, let

alone the named Defendant.

---

[9]  The Court reproduces the survey of cases as it is particularly instructive: "Because the law is not clearly established as to when a slippery floor becomes sufficiently substantial for Eighth Amendment purposes, it would not be clear to a reasonable prison official when held the risk of harm from not fixing a toilet leak changes from being a risk of some harm to a substantial risk of serious harm. See, e.g., Estate of Ford, 301 F.3d at 1050–51. Compare Johnson v. Martinez, No. 02–17101, 2003 WL 21437585 (9th Cir. June 17, 2003) (vacating grant of qualified immunity when prisoner, who walked with cane, requested reasonable accommodation in shower after he had already slipped and fallen twice, and prison officials did nothing before prisoner fell and injured himself a third time) (unpublished memorandum disposition); Frost, 152 F.3d at 1129 (finding that slippery floor plus exacerbating factors that prisoner repeatedly injured himself, and was forced to use crutches, was sufficient to establish serious condition); Hoptowit, 753 F.2d at 784 (concluding that existing hazards plus exacerbating hazard of bad lighting was sufficient to establish serious threat to the safety of inmates); Anderson v. Towne, No. 08–2480, 2010 WL 455387 (E.D.Cal. Jan.29, 2010) (wheelchair-bound prisoner who discovered sharp, broken tiles at entrance to the shower, complained and continually made requests to have it repaired for over a year, had medical reports stating that his hands were weak and he could not move around to sit or stand without his wheelchair, survived motion for summary judgment) with McLaughlin v. Farries, No. 03–60771, 2004 WL 2030365 (5th Cir. Sept.13, 2004) (per curiam) (unpublished opinion) (concluding that prisoner's slip and fall on accumulated water from leaky air conditioning unit, which the defendants knew about and failed to clean up was an appropriate action for negligence, but not deliberate indifference); Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir.2004) (concluding that although prisoner complained for two months about accumulated water in the shower, and finally sustained injuries from the slippery floor, "while the standing-water problem was a potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large" and is not a sufficiently serious risk of constitutional dimension); Brown v. Basher, No. 10–0479 MCE EFB, 2012 WL 639446 (E.D.Cal. Feb.27, 2012) (granting defendants' motion for summary judgment against a mobility impaired prisoner who ambulated with a cane and slipped and fell on puddle, created by a water leak, concluding that even though defendants knew about the puddle, the claim was one of negligence rather than deliberate indifference); Gilman v. Woodford, No. 05–0337, 2006 WL 1049739 (E.D.Cal. April 20, 2006) (granting qualified immunity to defendants when prisoner slipped and fell in puddle of water resulting from leaking ceiling, of which defendants knew); Edwards v. City of New York, No. 08–5787, 2009 WL 2596595 (S.D.N.Y. Aug.24, 2009) (courts have held that allegations of wet conditions leading to a slip-and-fall will not support a Section 1983 claim even where ... the plaintiff [ ] alleges that the individual defendants had notice of the wet condition but failed to address it."); Vines v. Hepp, No. 07–956, 2007 WL 3342583 (E.D.Wis. Nov.8, 2007) (finding accumulated puddles of water in shower not objectively serious condition sufficient to implicate Eighth Amendment); Jennings v. Horn, No. 05–9435, 2007 WL 2265574 (S.D.N.Y. Aug.7, 2007) (finding five months of water accumulation in detainee's cell did not objectively violate contemporary standards of decency and noting that "slippery prison floors, at best, pose a claim of negligence, which is not actionable under the United States Constitution."); Santiago v. Guarini, No. 03–4375, 2004 WL 2137822 (E.D.Pa.2004) (holding toilet and sink leak in cell, causing slip and fall, did not present substantial risk to inmate's safety, and was not objectively serious conditions); Tunstall v. Rowe, 478 F.Supp. 87, 89 (N.D.Ill.1979) (finding greasy staircase that caused prisoner to slip and fall not sufficient to violate the Eighth Amendment, Snyder v. Blankenship, 473 F.Supp. 1208, 1212 (W.D.Va.1979) (failure to repair leaking dishwasher which resulted in a pool of soapy water in which prisoner slipped did not violate Eighth Amendment)."  Washington v. Sandoval, No. C 10-0250 LHK PR, 2012 WL 987291, at *8 (N.D. Cal. Mar. 22, 2012).

Moving to the more specific, in cases involving stairs and handcuffs, courts have found qualified immunity. As stated in Ashlock, as of August 2014, "no Supreme Court case or 'robust consensus of cases of persuasive authority' in the Courts of Appeals establishes the right to physical assistance when an inmate is required to descend stairs while his hands are cuffed behind his back." Ashlock, 2016 WL 3476367, at *5–6 (quoting Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015)); see also Curry v. Tilton, No. C-07-0775 EMC PR, 2012 WL 967062, at *16–17 (N.D. Cal. Mar. 21, 2012) (finding that "[r]equiring an inmate to descend stairs while in waist restraints does not deny him the minimal civilized measure of life's necessities," as "[o]utside of prison, large numbers of people regularly climb and descend stairs without falling, and large numbers of people regularly climb and descend stairs with packages in their arms without falling," and holding officer entitled to qualified immunity on claim where inmate required to descend stairs while handcuffed and carrying bag of legal materials as "there is nothing to suggest that [the officer] had reason to and did perceive there was a substantial risk of serious harm to the inmate."); Gray v. Warm Springs Corr. Ctr., No. 2:13-CV-00901-RCJ, 2013 WL 4774632, at *4 (D. Nev. Sept. 4, 2013) ("Plaintiff pleads no facts indicating that any defendant was aware of an excessive risk that Plaintiff would fall down the stairs, e.g., based upon past incidents . . . [i]f the claim were determined on the merits, Defendants would almost certainly be entitled to qualified immunity, as it is not clear under the law requiring a prisoner to walk down stairs while shackled, without more, constitutes deliberate indifference.");

Based on the factual circumstances presented in this case, the Court cannot find that only someone "plainly incompetent" or who was "knowingly violat[ing] the law," Malley v. Briggs, 475 U.S. 335, 341 (1986), would have perceived that allowing an inmate to ascend stairs without physical assistance, with hands cuffed after showering, after the inmate asked for assistance, violates an inmate's Eighth Amendment right to be free from cruel and unusual punishment. Accordingly, the Court grants Defendant's motion for summary judgment on the additional ground that Defendant is entitled to qualified immunity.

///

///

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     The Court's order striking Plaintiff's November 5, 2018 filing (ECF No. 35) is VACATED;

2.     The Clerk of the Court is DIRECTED to docket Plaintiff's November 5, 2018 filing (ECF No. 34) as Plaintiff's surreply to Defendant's reply to Plaintiff's opposition to Defendant's motion for summary judgment (ECF No. 33);

3.     Defendant's motion for summary judgment (ECF No. 29) is GRANTED; and

4.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant.

IT IS SO ORDERED.

Dated:   **July 19, 2019**

UNITED STATES MAGISTRATE JUDGE